MICHAEL A. CARRIGAN, FOURTH WARD CITY COUNCIL MEMBER OF THE CITY OF SPARKS, APPELLANT, v. THE COMMISSION ON ETHICS OF THE STATE OF NEVADA, RESPONDENT.

No. 51920

July 29, 2010                                    236 P.3d 616

*Chester H. Adams*, City Attorney, and *Douglas R. Thornley*, Assistant City Attorney, Sparks, for Appellant.

*Nevada Commission on Ethics* and *Adriana G. Fralick*, Carson City, for Respondent.

*Legislative Counsel Bureau Legal Division* and *Brenda J. Erdoes*, Legislative Counsel, and *Kevin C. Powers*, Senior Principal Deputy Legislative Counsel, Carson City, for Amicus Curiae Legislature of the State of Nevada.

# OPINION

By the Court, DOUGLAS, J.:

In this appeal, we consider whether the Nevada Commission on Ethics' censure of an elected public officer for alleged voting violations under NRS 281A.420(2)(c) violates the First Amendment.[2] NRS 281A.420(2)(c) sets forth one of the legal standards for determining whether a public officer must abstain from voting on a particular matter, based on the officer's "commitment in a private capacity to the interests of others." NRS 281A.420(8) defines this commitment to include four specific prohibited relationships between a public official and others and describes a fifth catchall definition as "[a]ny other commitment or relationship that is substantially similar to a commitment or relationship described in this subsection." The catchall definition of a prohibited relationship by a public official in NRS 281A.420(8)(e) confronts the First Amendment on appeal.

We first conclude that voting by public officers on public issues is protected speech under the First Amendment. Because NRS 281A.420(2)(c) directly involves the regulation of protected speech by a public officer in voting, we next determine that the definitional statute NRS 281A.420(8)(e) must be strictly scrutinized under a First Amendment overbreadth analysis. Applying a strict scrutiny standard, we conclude that NRS 281A.420(8)(e) is unconstitutionally overbroad in violation of the First Amendment, as

---

[2]NRS 281A.420 was formerly NRS 281.501. 2007 Nev. Stat., ch. 538, § 3.8, at 3372. While the Commission's decision referred to NRS 281.501, the parties' briefs have referred to the 2007 version of the statute, NRS 281A.420, which we likewise follow in this opinion.

it lacks necessary limitations to its regulations of protected speech. Consequently, the district court erred in its interpretation of NRS 281A.420(8)(e) and its application to NRS 281A.420(2)(c), and thus, we reverse the district court's order.

## FACTS

Appellant Michael A. Carrigan was first elected to the Sparks City Council in 1999 and has twice been reelected. During each of his election campaigns, Carrigan's longtime professional and personal friend, Carlos Vasquez, served as his campaign manager. In addition to serving as Carrigan's campaign manager, Vasquez worked as a consultant for the Red Hawk Land Company. In that role, Vasquez was responsible for advising Red Hawk on various matters pertaining to the development of a hotel/casino project known as the Lazy 8.

In early 2005, Red Hawk submitted an application to the City of Sparks regarding the Lazy 8 project. The Sparks City Council set the matter for a public hearing. Before the hearing, and in light of the long-standing relationship between Carrigan and Vasquez, Carrigan consulted the Sparks City Attorney for guidance regarding any potential conflict of interest. The City Attorney advised Carrigan to disclose, on the record, any prior or existing relationship with Vasquez before voting on the Lazy 8 matter. Taking the City Attorney's advice, Carrigan made the following disclosure before casting his vote:

> I have to disclose for the record . . . that Carlos Vasquez, a consultant for Redhawk, . . . is a personal friend, he's also my campaign manager. I'd also like to disclose that as a public official, I do not stand to reap either financial or personal gain or loss as a result of any official action I take tonight.
>
> [T]herefore, according to [NRS 281A.420] I believe that this disclosure of information is sufficient and that I will be participating in the discussion and voting on this issue.

A few weeks after Carrigan cast his vote, respondent Nevada Commission on Ethics received several complaints regarding a

---

We acknowledge that the Legislature further amended NRS 281A.420 in 2009. 2009 Nev. Stat., ch. 257, § 9.5, at 1057. However, contrary to the assertions made by the dissent in footnote 5, we conclude that these amendments are insufficient to cure the statute's constitutional deficiencies. In particular, we note that the statute still does not provide sufficient limitations on what relationships may require abstention from voting. The language cited in footnote 5 of the dissent also does nothing to define the "clear cases" that require abstention from voting. Therefore, the statute remains overbroad and not the least restrictive means to promote the statute's goals. Accordingly, we reject the dissent's contention that this appeal should only be analyzed on an as-applied basis.

possible conflict of interest. The Commission reviewed the complaints and authorized an investigation.

Upon completion of the investigation, the Commission issued a written decision censuring Carrigan for violating an ethics law, NRS 281A.420(2), by failing to abstain from voting on the Lazy 8 matter.[3] The Commission found that Carrigan had improperly voted on the Lazy 8 "matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by . . . [his] commitment in a private capacity to the interests of others." *See* NRS 281A.420(2)(c). To reach this conclusion, the Commission evaluated the legislative history of the definitions of prohibited relationships by a public official contained in NRS 281A.420(8) and determined that the Legislature enacted NRS 281A.420(8)(e) to cover "commitments and relationships that, while they may not fall squarely within those enumerated in [NRS 281A.420(8)(a)-(d)], are substantially similar to those enumerated categories because the independence of judgment may be equally affected by the commitment or relationship." In particular, the Commission found that Carrigan's relationship with Vasquez came within the scope of NRS 281A.420(8)(e), in that the relationship "equates to a 'substantially similar' relationship to those enumerated under [NRS 281A.420(8)(a)-(d)]" and "[is] illustrative of [relationships] contemplated by [NRS 281A.420(8)(e)]." In other words, the Commission found that Carrigan should have known that his relationship with Vasquez fell within the catchall definition and prevented him from voting on Red Hawk's application for the Lazy 8 project.

Carrigan filed a petition for judicial review with the district court to challenge the Commission's decision. The district court denied the petition based on its determination that the state has a strong interest in having an ethical government, which outweighs a public officer's and state employee's protected free speech voting right. The court further rejected Carrigan's challenges to the constitutionality of the statute, based on overbreadth and vagueness. This appeal followed. The Legislature of the State of Nevada was granted permission to file an amicus brief in support of the Commission's position.

## DISCUSSION

Carrigan challenges the constitutionality of the Commission's censure on several grounds: overbreadth, vagueness, and unconstitutional prior restraint on speech. To resolve this appeal, we focus on Carrigan's First Amendment challenge in which he argues

---

[3]The Commission determined that Carrigan's action did not constitute a willful violation of NRS 281A.420(2), and thus, it did not impose a civil penalty. NRS 281A.480.

that NRS 281A.420(8)(e) is unconstitutional in violation of his free speech rights.[4] Carrigan asserts that voting by a public officer is protected speech and therefore the statute should be reviewed under a strict scrutiny analysis, and under that analysis, the statute must be declared unconstitutional because the statute is not narrowly tailored to meet a compelling government interest. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010). The Commission and the Legislature (as amicus) assert that the district court properly concluded that the statute should be reviewed under a less strict standard as outlined by the United States Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under that standard, they argue, the interests of the state in preventing corruption outweigh Carrigan's free speech right to vote on an issue in which he has a disqualifying interest. Alternatively, the Commission contends that if strict scrutiny applies, NRS 281A.420 is constitutional because: "(1) Nevada has a compelling state interest in promoting ethical government and guarding the public from biased decision makers; and (2) the statutory provisions requiring disqualified public officers to abstain from voting constitutes the least restrictive means available to further the state's compelling interest."

In resolving this First Amendment challenge, we initially address whether voting on a particular matter by an elected public officer is protected speech under the First Amendment. Concluding that it is protected speech, we next consider Carrigan's overbreadth challenge. In doing so, we address the appropriate standard to apply in reviewing Carrigan's overbreadth challenge and determine that a strict scrutiny standard is required. Applying a strict scrutiny standard to the statute at issue, we conclude that subsection 8(e) is overbroad in violation of the First Amendment.[5]

*Standard of review*

This court, like the district court, reviews an appeal from an "administrative decision for clear error or abuse of discretion." *Grover C. Dils Med. Ctr. v. Menditto*, 121 Nev. 278, 283, 112

---

[4]In light of our resolution on Carrigan's overbreadth challenge, we need not address Carrigan's vagueness and prior restraint arguments in resolving this appeal. *See Director, Dep't Prisons v. Arndt*, 98 Nev. 84, 86, 640 P.2d 1318, 1320 (1982) (noting that "[i]t is well settled that this court will not address constitutional issues unless the[y] are requisite to the disposition of the case").

[5]The dissent disagrees with our analysis of this case, challenging our conclusions that subsection 8(e) of NRS 281A.420 is unconstitutionally overbroad and disputing the application of a strict scrutiny standard. The dissent's challenges to our conclusions are unpersuasive, however, as the dissent misunderstands the pertinent issue raised in this appeal. The dissent improperly focuses on the question of whether recusal is an appropriate requirement to promote

P.3d 1093, 1097 (2005). While the instant matter involves an appeal from an administrative decision, Carrigan's arguments on appeal present purely legal questions, which we review de novo. *Howard v. City of Las Vegas*, 121 Nev. 691, 693, 120 P.3d 410, 411 (2005). Also, because the constitutionality of a statute is a question of law, our review is de novo. *Sheriff v. Burdg*, 118 Nev. 853, 857, 59 P.3d 484, 486 (2002).

*Voting by public officers*

The Ethics in Government statute at issue in this case is NRS 281A.420.[6] NRS 281A.420(2)(c) requires that

> a public officer shall not vote upon or advocate the passage or failure of, but may otherwise participate in the consideration of, a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by . . . [his] *commitment in a private capacity to the interests of others*.

(Emphasis added.) NRS 281A.420(8) defines the "commitment in a private capacity to the interests of others" as a commitment to a person:

> (a) Who is a member of his household;
> (b) Who is related to him by blood, adoption or marriage within the third degree of consanguinity or affinity;
> (c) Who employs him or a member of his household;
> (d) With whom he has a substantial and continuing business relationship; or

---

the Legislature's goal of avoiding impropriety when a publicly elected official has a conflict of interest. We do not dispute that requiring recusal under certain circumstances is appropriate and related to addressing conflict of interest concerns. But that is not the issue on appeal. The issue on appeal is whether the statute that establishes the recusal requirement provides sufficient limitations and explanations concerning when recusal is required to avoid overreaching into unnecessary situations. In other words, the dissent focuses on whether the required conduct is appropriate, instead of focusing on whether the statute creating the required conduct is constitutional. The dissent, in essence, reviews this case under on an as-applied challenge concerning whether requiring recusal is allowed, instead of reviewing it as a facial challenge regarding whether the statute that creates the recusal requirement does so with sufficient limitation and clarity to avoid violating constitutional rights. We do not conclude that NRS 281A.420(8)(e) is unconstitutional because the Legislature can never require recusal; it is unconstitutional because the Legislature failed to establish the appropriate circumstances under which recusal can be required in accordance with constitutional protections. Because the dissent focuses on an entirely different issue than that raised in this appeal and addressed by this opinion, we do not respond further to the specific arguments made or legal authorities relied upon by the dissent.

[6]NRS 281A.010 provides that NRS Chapter 281A "may be cited as the Nevada Ethics in Government Law."

(e) *Any other commitment or relationship that is substantially similar to a commitment or relationship described in this subsection.*

(Emphasis added.) Central to this controversy is paragraph (e).

*The act of voting by a public officer is protected speech under the First Amendment*

Initially, we must determine whether NRS 281A.420 regulates protected speech under the First Amendment. Under the First Amendment, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment applies to state governments through the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925). Although this court has not directly addressed whether voting on matters by an elected public officer is protected speech, other courts have recognized that "[t]here is no question that political expression such as [a city council member's] positions and votes on City matters is protected speech under the First Amendment." *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999); *accord Connick v. Myers*, 461 U.S. 138, 145 (1983) ("[T]he Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982))); *see also Miller v. Town of Hull, Mass.*, 878 F.2d 523, 532 (1st Cir. 1989) (stating that "we have no difficulty finding that the act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment"). Recently we recognized in *Commission on Ethics v. Hardy*, 125 Nev. 285, 296, 212 P.3d 1098, 1106 (2009), that "voting on legislation is a core legislative function."[7] Because voting is a core legislative function, it follows that voting serves an important role in political speech. Based on our recognition of voting as a core legislative function, and in connection with other jurisdictions' holdings that voting in a legislative setting is protected speech, we conclude that voting by an elected public officer on public issues is protected speech under the First Amendment.

---

[7]Despite the dissent's assertions, we do not cite to *Hardy* for the propositions that First Amendment protection is extended to a local government official's vote on a land use matter, such a vote is core political speech, or that *Hardy* specifically speaks to the issue in this case. We do, however, cite to *Hardy* for the proposition that voting on legislation is a core legislative function and that political speech is a core function of a public officer. *Hardy*, 125 Nev. at 296, 212 P.3d at 1106.

*Overbreadth*

> *A strict scrutiny standard applies to a statute regulating an elected public officer's protected political speech of voting on public issues*

Having concluded that voting by an elected public officer on public issues is protected speech under the First Amendment, we must next determine the appropriate standard to apply in reviewing the constitutionality of NRS 281A.420(8)(e). Carrigan argues that a strict scrutiny standard applies because voting is protected free speech. The Commission contends, and the district court agreed, that Carrigan's free speech rights must be analyzed under the two-part balancing inquiry enunciated by the United States Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968), because Carrigan, as an elected city council member, is a state employee. Therefore, the Commission argues that the state's interests, as Carrigan's employer, in establishing an efficient government must be balanced with Carrigan's free speech rights as an employee.

The *Pickering* balancing test is a lower standard of review used in situations involving a state employee. 391 U.S. at 568. This standard is based on the view that the state, as an employer, has a stronger interest in regulating an employee's speech than in regulating the speech of the general public, in order to promote efficiency in the public services it offers, while also recognizing that a citizen does not forfeit all free speech rights when working for the government. *Id.* Under the *Pickering* balancing test, the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

Carrigan's relationship with the state differs from that of most public employees, however, because he is an elected officer "about whom the public is obliged to inform itself, and the 'employer' is the public itself, at least in the practical sense, with the power to hire and fire." *Jenevein v. Willing*, 493 F.3d 551, 557 (5th Cir. 2007). While Carrigan is employed by the government, he is an elected public officer, and his relationship with his "employer," the people, differs from that of other state employees. *Id.* Therefore, the district court erred in applying the *Pickering* balancing test.

Instead, a strict scrutiny standard applies. NRS 281A.420 establishes requirements for when a public officer must refrain from exercising speech by abstaining from voting on certain public issues. Thus, the statute deals directly with regulating speech, and as recognized in *Hardy*, political speech is a core function of a pub-

lic officer. Strict scrutiny is therefore the appropriate standard. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010) (stating that "[l]aws that burden political speech are subject to strict scrutiny" (internal quotations omitted)); *Nordyke v. King*, 563 F.3d 439, 460-61 (9th Cir. 2009) (stating that a law that directly regulates speech is subject to strict scrutiny).

### *NRS 281A.420(8)(e) is facially overbroad*

We now consider Carrigan's overbreadth challenge to NRS 281A.420(8)(e) under the applicable strict scrutiny standard. In determining whether the statute is unconstitutionally overbroad, we must keep in mind that this is a facial challenge.[8] A facial challenge requires striking a balance between the competing interests of protecting the exercise of free speech rights—as an overbroad statute "deters people from engaging in constitutionally protected speech"—with the potential harm in invalidating a statute that may be constitutional in some of its applications. *United States v. Williams*, 553 U.S. 285, 292 (2008). Because invalidating a statute for overbreadth is "strong medicine," it should "not be casually employed." *Id.* at 293 (internal quotations omitted).

Under a strict scrutiny standard, the United States Constitution demands a high level of clarity from a statute seeking to regulate constitutionally protected speech. *See Smith v. Goguen*, 415 U.S. 566, 573 (1974); *Grayned v. City of Rockford*, 408 U.S 104, 108-09 (1972). An overbroad law tends to chill the exercise of First Amendment rights by sweeping " 'within its ambit other activities that in ordinary circumstances constitute an exercise of' protective First Amendment rights." *City of Las Vegas v. Dist. Ct.*, 118 Nev. 859, 863 n.14, 59 P.3d 477, 480 n.14 (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940)). Under a facial overbreadth challenge, a statute should not be held void " 'unless it is substantially overbroad in relation to the statute's plainly legitimate sweep.' " *Silvar v. Dist. Ct.*, 122 Nev. 289, 298, 129 P.3d 682, 688 (2006) (quoting *Coleman v. City of Richmond*, 364 S.E.2d 239, 243 (Va. Ct. App. 1988)). A strict scrutiny standard "requires the Government to prove that the restriction furthers a com-

---

[8]While generally a facial challenge cannot be maintained by someone whose conduct the statute could validly regulate, there is an exception to this rule under First Amendment overbreadth challenges based on the danger that an overbroad statute's " 'very existence may cause others not before the court to refrain from constitutionally protected speech or expression.' " *City Council v.*

pelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (internal quotations omitted).[9]

Carrigan contends that NRS 281A.420(8)(e) is not narrowly tailored since the Commission arbitrarily determines whether a public officer's relationships are "substantially similar" to the other relationships listed in subsection 8. Carrigan argues that because the subsection 8(e) definition of "[a]ny other commitment or relationship that is substantially similar to a commitment or relationship described in this subsection" does not provide sufficient limitations on what relationships may require abstention from voting, the statute is overbroad and is therefore not the least restrictive means available to promote the statute's goals. The Commission contends that NRS 281A.420(8)(e) is constitutional because it promotes a compelling state interest in maintaining an ethical government and protecting the public from bias, and the restrictions constitute the least restrictive means available to further the state's compelling interest.

We agree with the Commission that promoting the integrity and impartiality of public officers through disclosure of potential conflicts of interest is clearly a compelling state interest that is consistent with the public policy rationale behind the Nevada Ethics in Government Law. *See* NRS 281A.020 (public policy for Nevada Ethics in Government Law). Thus, arguably, NRS 281A.420(8)(e) meets the first requirement under a strict scrutiny standard; the statute furthers a compelling state interest. The statute fails, however, to meet the "narrowly tailored" requirement.

NRS 281A.420(2)(c) requires that a public officer refrain from voting when, among other things, "the independence of judgment of a reasonable person in his situation would be materially affected by . . . his commitment in a private capacity to the interests of others." The phrase "commitment in a private capacity to the interests of others" is defined in part in NRS 281A.420(8)(e), which

---

*Taxpayers for Vincent*, 466 U.S. 789, 799 (1984) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Thus, the Commission's arguments that the statute should not be declared invalid because it could be constitutionally applied to Carrigan are unavailing, and we need not consider them further.

[9]Strict scrutiny has been described as ranking "among the most important doctrinal elements in constitutional law." Richard H. Fallon, Jr., *Strict Judicial Scrutiny*, 54 UCLA L. Rev. 1267, 1268 (2007). Strict scrutiny is distinct from other forms of review and "varies from ordinary scrutiny by imposing three hurdles on the government. It shifts the burden of proof to the government; requires the government to pursue a 'compelling state interest;' and demands that the regulation promoting the compelling interest be 'narrowly tailored.'" Stephen A. Siegel, *The Origin of the Compelling State Interest Test and Strict Scrutiny*, 48 Am. J. Legal Hist. 355, 359-60 (2006) (footnotes omit-

in relevant part states that this includes "a commitment to a person" with whom the public officer has a "commitment or relationship that is substantially similar" to one of the relationships outlined in subsection 8. NRS 281A.420(8)(e).

The definition of a "commitment in a private capacity" in subsection 8(e) fails to sufficiently describe what relationships are included within NRS 281A.420(2)(c)'s restriction. As a result, the statute's reach is substantially overbroad in its regulation of protected political speech.

There is no definition or limitation to subsection 8(e)'s definition of any relationship "substantially similar" to the other relationships in subsection 8. This catchall language fails to adequately limit the statute's potential reach and does not inform or guide public officers as to what relationships require recusal. Thus, the statute has a chilling effect on the exercise of protected speech, for it threatens punishment for noncompliance, which "deters people from engaging in constitutionally protected speech." *Williams*, 553 U.S. at 292.

Based on the overly broad definition in NRS 281A.420(8)(e) of what constitutes a "commitment in a private capacity," NRS 281A.420(2)(c)'s abstention requirement for this category of relationships lacks necessary limitations to its protected speech regulation. Thus, NRS 281A.420(8)(e)'s application to a wide range of differing commitments and relationships is not narrowly tailored. Accordingly, NRS 281A.420(8)(e) is substantially overbroad, sweeps within its control a vast amount of protected speech, and violates the First Amendment.

Therefore, we declare NRS 281A.420(8)(e) unconstitutionally overbroad in violation of the First Amendment and reverse the district court's order.[10]

HARDESTY, CHERRY, SAITTA, and GIBBONS, JJ., concur.

PICKERING, J., dissenting:

Before today, no published decision has held that an elected local official engages in core political speech when he or she votes on an individual land use matter. Likewise, no published decision

---

ted); *see United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) ("the Government bears the burden of identifying a substantial interest and justifying the challenged restriction").

[10]Because issues as to other portions of the statute are not raised, this opinion only addresses these limited sections and does not make a determination as to the remainder of the statute.

reviewing the ethical propriety of such a vote has subjected the applicable legislative prohibition against conflicts of interest to strict scrutiny or invalidated it on overbreadth grounds. Because I believe charting this course is both unprecedented and unwise, I respectfully dissent.

### Separation of powers

Our decision in *Commission on Ethics v. Hardy*, 125 Nev. 285, 212 P.3d 1098 (2009), on which the majority relies, did not extend First Amendment protection to a local government official's vote on a land use matter[1] or declare such a vote to be core political speech. At issue in *Hardy* was whether, for separation-of-powers purposes, a member of the Nevada Legislature engages in core legislative speech when voting on state legislation. *Id.* at 293-97, 212 P.3d at 1104-07. Citing *Brady v. Dean*, 790 A.2d 428 (Vt. 2001), we held that the Legislature could not delegate to an executive branch agency—the Ethics Commission—the power to police state legislators' conflicts of interests in voting. *Hardy*, 125 Nev. at 294-96, 212 P.3d at 1105-06. The basis for our decision was not that the First Amendment requires strict scrutiny of conflict-of-interest rules for elected officials who vote. It was that Nevada's constitutional provisions vesting authority in the Legislature to discipline its members, Nev. Const. art. 4, § 6, and mandating separation of powers at the state level, *id.* art. 3, § 1(1), prohibit the Legislature from outsourcing member discipline to an executive branch agency. *Hardy*, 125 Nev. at 298, 212 P.3d at 1108. Only the Legislature, in other words, can discipline its members for legislative speech, including votes violating that body's conflict-of-interest rules.

*Hardy* doesn't speak to the issue in this case, where a state ethics-in-government statute is being applied to a local governmental official who votes. A local government exercises such powers as the Legislature and Constitution confer. Nev. Const. art. 8, § 8; *see* 2 Eugene McQuillin, *The Law of Municipal Corporations* § 4:5 (3d ed. 2006). A corollary proposition is that, "[u]nless restricted by the constitution, the legislature may prescribe the qualifications, tenure, and duties of municipal officers." 2 McQuillin, *supra*, § 4:124, at 356. While Nevada's separation-of-powers guarantee prohibits the Legislature from outsourcing member discipline to an executive branch agency, nothing in our Constitution limits the Legislature's authority to subject local governmental officials to state ethics laws administered by the Nevada Ethics Commission. Indeed, the *Brady* decision, on which *Hardy* principally relies, em-

---

[1]The Sparks City Council vote underlying this proceeding came before us in *Adams v. City of Sparks*, Docket Nos. 49504/49682/50251 (Order of Affirmance, July 21, 2009), where we held that the Lazy 8 vote represented a land

phasizes that it only addresses state-level legislators and does not call into question conflict-of-interest statutes that apply to local governmental officials. *See Brady*, 790 A.2d at 433 (the "conflict-of-interest cases on which plaintiffs rely all involved elected officials of political subdivisions such as cities and towns which do not raise similar separation-of-power concerns").[2]

### First Amendment and acts of governance

An elected official's vote on a matter of public importance is first and foremost an act of governance. The official has broad common law and, at the federal level, Speech and Debate Clause immunity for his vote. *See* S. Sherr, *Freedom and Federalism: The First Amendment's Protection of Legislative Voting*, 101 Yale L.J. 233, 235-36 (1991) (discussing U.S. Const. art. I, § 6). But thus far the Supreme Court has not overlaid that immunity with First Amendment protection for the act of governance that an official's vote on a public matter represents. *Id.* at 245.

Whether the First Amendment protects an official's vote qua governance was raised but not decided in *Spallone v. United States*, 493 U.S. 265 (1990), an appeal of a contempt order issued against the City of Yonkers and its city council members for not passing an ordinance required by a federal consent decree. Justice Brennan would have upheld the contempt citation against both the City and its council members and reached the First Amendment issue. *Id.* at 281-306 (dissenting). Writing for four members of the Court, he characterized as "unpersuasive" the argument that the First Amendment protected a city council member's vote "yea" or "nay" on the ordinance to which the City had stipulated in the federal consent decree:

> Petitioner Chema claims that his legislative discretion is protected by the First Amendment as well. Characterizing his vote on proposed legislation as core political speech, he contends that the Order infringes his right to communicate with his constituents through his vote. This attempt to

use decision reviewable, if at all, by a petition for judicial review under NRS 278.3195(4). Although policy-setting land use planning ordinances qualify as legislative, local governments exercise quasi-adjudicative or administrative powers when they decide individual zoning or land use matters. *See Garvin v. Dist. Ct.*, 118 Nev. 749, 765, 59 P.3d 1180, 1190-91 (2002) (noting that our ballot initiative law holds individual land use decisions to be non-legislative and hence not appropriate for direct democratic vote). Conflict-of-interest rules and due process concerns apply to individual land use decisions. *See Hantges v. City of Henderson*, 121 Nev. 319, 325-27, 113 P.3d 848, 851-53 (2005) (dictum).

[2]Carrigan makes no argument that applying Nevada's ethics laws violates the Nevada Constitution's home-rule provision.

> recharacterize the common-law legislative immunity doctrine
> into traditional First Amendment terms is unpersuasive. *While
> the act of publicly voting on legislation arguably contains
> a communicative element, the act is quintessentially one of
> governance . . . .*

*Id.* at 302 n.12 (emphasis added). *See Clarke v. United States*, 915
F.2d 699, 708 (D.C. Cir. 1990) (en banc) (vacating as moot an
earlier panel opinion that held, pre-*Spallone*, that Congress could
not, consistent with the First Amendment, coerce the votes of the
District of Columbia Council; noting that this was an "important"
issue "of first impression" that "would carry broad implications"
for federal, state, and local governments and might "open[ ] the
door to more litigation than we can now appreciate"); *Zilich v.
Longo*, 34 F.3d 359, 363-64 (6th Cir. 1994) (holding that a former
city council member's First Amendment rights were not violated
by a resolution authorizing suit against him for having violated the
council's residency requirement, even though alleged to be in re-
taliation for his politics: "Congress frequently conducts committee
investigations and adopts resolutions condemning or approving of
the conduct of elected and appointed officials, groups, corporations
and individuals"; the "manifest function of the First Amendment
in a representative government requires that legislators be given the
widest latitude to express their views," including the plaintiff's
"right to oppose the mayor" and the "defendants' right to op-
pose" the plaintiff "by acting on the residency issue" (internal
quotation and citation omitted)); *Rangra v. Brown*, 584 F.3d 206
(5th Cir. 2009) (dismissing appeal after vacating panel decision,
566 F.3d 515, *reh'g granted*, 576 F.3d 531, that had concluded
that elected local and state government officials' decision-making
represents political speech, requiring the Texas Open Meeting Act
to survive strict scrutiny review); *cf. Doe v. Reed*, 561 U.S. 186,
194-96, 199 n.2 (2010) (recognizing that a citizen engages in both
expressive and legislative speech in signing a referendum petition
and declining strict scrutiny review of Washington's Public Records
Act's application to signers who wished to remain anonymous).

Voting by a public official is conduct—an act of governance.
Still, as Justice Brennan noted in *Spallone*, a public official's vote
also "arguably contains a communicative element," 493 U.S. at
302 n.12; an elected official's vote defines his beliefs and positions
in a way words alone cannot. Thus, the First Amendment was held
to protect the communicative element in a public official's vote in
*Miller·v. Town of Hull, Mass.*, 878 F.2d 523 (1st Cir. 1989), on
which the majority relies.

*Miller* was a retaliation case under 42 U.S.C. § 1983. In *Miller*,
the First Circuit affirmed a judgment after a jury trial awarding

elected members of a town redevelopment authority damages against the board of selectmen who removed them, the jury found, not for a permissible reason but in retaliation for their vote on a housing development for the elderly. 878 F.2d 523. The expressive component of the redevelopment authority members' votes in *Miller* was what was singled out and punished: The board members were retaliated against for *how* they voted, not *because* they voted.

There is a difference the majority does not acknowledge between " 'retaliatory First Amendment claims' and 'affirmative' First Amendment claims, such as 'facial challenges to statutes.' " *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (quoting *Greenwich Citizens Comm. v. Counties of Warren*, 77 F.3d 26, 31 (2d Cir. 1996)). Because a First Amendment retaliation claim succeeds does not mean that the right vindicated is absolute, or that a statute that implicates such a right while regulating related conduct in a content-neutral way must pass strict scrutiny to survive facial challenge. First Circuit cases that have followed *Miller* make the point unmistakably. Thus, in *Mullin v. Town of Fairhaven*, 284 F.3d 31, 37 (2002), the First Circuit refined *Miller*, stating that, while "[w]e have extended First Amendment protection to votes on 'controversial public issue[s]' cast by 'a member of a public agency or board[,]' . . . [*t*]*his protection is far from absolute.*" *Mullin*, 284 F.3d at 37 (emphasis added) (quoting *Miller*, 878 F.2d at 532). The court then proceeded to analyze Mullin's First Amendment retaliation claim under the flexible *Pickering v. Board of Education*, 391 U.S. 563 (1968), standard the majority rejects— paradoxically, at the same time it embraces *Miller*. *See also Mihos v. Swift*, 358 F.3d 91, 109 (1st Cir. 2004) ("we articulate the First Amendment right at stake here as the right of a public official to vote on a matter of public concern properly before his agency without suffering retaliation from the appointing authority *for reasons unrelated to legitimate governmental interests*"; applying *Pickering* balancing (emphasis added)).

The *Pickering/Garcetti v. Ceballos*, 547 U.S. 410 (2006), line of cases speaks to the First Amendment rights of public employees and holds that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Restricting a public employee's official speech "does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421-22.

The majority deems *Pickering/Garcetti* inapplicable because Carrigan is elected and his constituents, not the government,

are his ultimate employer with the power to hire or fire him. But this is an overly simplistic view. It does not take into account the Legislature's control over local governments in our state constitutional scheme and the constitutional and policy-based imperative of non-self-interested governmental decisionmakers, especially in the quasi-adjudicative setting. Even though Carrigan is an elected official, I thus would affirm the district court's ruling that *Pickering/Garcetti* balancing applies to Carrigan's challenge to Nevada's Ethics in Government Act. *See Siefert v. Alexander*, 608 F.3d 974 (7th Cir. 2010) (applying *Pickering/Garcetti* balancing, not strict scrutiny, to challenge by judge campaigning for reelection to ethics regulations; rejecting the argument that *Pickering/Garcetti* depends on who can hire or fire the government official and noting that, "It is small comfort for a litigant who takes her case to state court to know that while her trial was unfair, the judge would eventually lose an election, especially if that litigant were unable to muster the resources to combat a well-financed, corrupt judge around election time."); *Shields v. Charter Tp. of Comstock*, 617 F. Supp. 2d 606, 615-16 (W.D. Mich. 2009) (applying *Pickering/Garcetti* to elected member of the Township Board and noting that, "[u]nlike an ordinary citizen, [Shields] represents the Township when he speaks at a public board meeting [making] his constitutional rights . . . more analogous to the employee in *Garcetti* than to a private citizen sitting in the audience").

### *Strict scrutiny v. rational basis or intermediate review*

Here, Carrigan has not brought a retaliation claim. He challenges whether Nevada's Ethics in Government Law can constitutionally apply to him, even when the purpose is prophylactic—to avoid conflicts of interest—not retaliatory. Of note, the Law does not regulate *how* councilmember Carrigan votes. It provides that he should not vote at all on "a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by . . . [h]is commitment in a private capacity to the interests of others." NRS 281A.420(2)(c).[3] Its target is conduct—acts of governance—not personal, expressive speech.

A law limiting an elected official's ability to vote on matters as to which he has an actual or apparent conflict of interest does not trigger strict scrutiny. It commands either rational basis, *Peeper v. Callaway County Ambulance District*, 122 F.3d 619, 622-23 (8th Cir. 1997), or at most the intermediate level of review given laws

---

[3]The Ethics in Government Act was amended in 2009, which resulted in some of its sections being renumbered. Unless otherwise noted, I have followed the majority's convention and refer to the pre-2009 version of the Act in this dissent.

regulating conduct that incidentally regulate speech, *see Clarke v. United States*, 886 F.2d 404, 413-14 (D.C. Cir. 1989) (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), *vacated as moot*, 915 F.2d 699 (D.C. Cir. 1990) (en banc) (alternative holding), as applied in candidate ballot access cases. *Monserrate v. New York State Senate*, 599 F.3d 148 (2d Cir. 2010).

At issue in *Peeper* was a board resolution prohibiting a newly elected ambulance board member from voting on certain matters because her husband worked for the ambulance district. 122 F.3d at 620-21. Although the Eighth Circuit invalidated parts of the resolution because it went further than the state conflict-of-interest law required, it used rational basis review and rejected strict scrutiny as inappropriate. *Id.* at 22-23. In its view, "[a]n individual's right to be a candidate for public office under the First and Fourteenth Amendments is nearly identical to one's right to hold that office," making it appropriate to "employ the same constitutional test for restrictions on an officeholder as we do for restrictions on candidacy." *Id.* at 622. Quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972), and *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983), *Peeper* noted that the existence of barriers to a candidate's right of access to the ballot does not in and "of itself compel close scrutiny," and stressed that, "[t]he Supreme Court has upheld restrictions on candidacy that are unrelated to First Amendment values and that protect the integrity and reliability of the electoral process itself." 122 F.3d at 622-23. *Accord Franzwa v. City of Hackensack*, 567 F. Supp. 2d 1097 (D. Minn. 2008) (rejecting First Amendment challenge by an elected board member to his temporary suspension by his fellow board members from voting privileges for what they erroneously believed was his disqualification; judged under a rational basis standard, the board, which had the power to judge the qualifications of its members, reasonably believed that the plaintiff's residency qualification was in doubt).

The Second Circuit pursued much the same analysis in *Monserrate v. New York State Senate*, 599 F.3d 148 (2d Cir. 2010), which presented a First Amendment challenge to the New York State Senate's expulsion of an elected senator following his domestic violence conviction. As the Eighth Circuit did in *Peeper*, the Second Circuit drew on *Anderson v. Celebrezze*, and analogized post-election discipline of elected officials to pre-election candidacy restrictions. *Id.* at 154-55 (also citing *Burdick v. Takushi*, 504 U.S. 428, 432 (1992)). In both the pre- and post-election context, "the rights of voters and the rights of candidates [or elected officials] do not lend themselves to neat separation." *Id.* (internal quotation omitted). The court affirmed that "[t]he district court did not err in declining to apply strict scrutiny," and elaborated that:

> . . . it is an erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny. Rather, it is useful to look to a more flexible standard in which the rigorousness of our inquiry into the propriety of a state [action] depends upon the extent to which a challenged [action] burdens First and Fourteenth Amendment rights. When such rights are subjected to severe restrictions, the [action] must be narrowly drawn to advance a state interest of compelling importance; but when such rights are subjected to less than severe burdens, the State's important . . . interests are generally sufficient to justify the restrictions. Therefore, if the burden imposed is less than severe and reasonably related to the important state interest, the Constitution is satisfied.

*Id.* (internal quotations and citations omitted).

"It seems clear enough," the court held, that "this flexible framework, used in ballot access cases, is not limited to the pre-vote context," but applies as well to cases applying post-election restrictions on elected officials. *Id.* at 155. Given the New York Senate's "important interest in upholding its reputation and integrity," and the "reasonab[le] relat[ionship]" between that interest and Monserrate's expulsion, the court denied Monserrate relief.[4] *Id.* at 155-56. In so doing, it noted that the expulsion had the effect of depriving his constituents of elected representation until a successor was chosen. *Id.* at 156. Because the voters of every senate district were likewise subject to having the senate's expulsion rules applied to their elected representative, this did not offend their First or Fourteenth Amendment rights. *Id.* at 156-57.

No doubt requiring Carrigan to recuse himself on matters involving his longtime friend and then-current campaign manager,

---

[4]Had Monserrate been expelled to punish him for *speech* outside the senate as opposed to *conduct*, a different analysis and result would obtain. Thus, in *Bond v. Floyd*, 385 U.S. 116 (1966), the Supreme Court invalidated a state's refusal to seat a federal legislator based on his outspoken opposition to the Selective Service system and the Vietnam war. *Jenevein v. Willing*, 493 F.3d 551 (5th Cir. 2007), cited by the majority to support strict scrutiny review, makes the same point. *Jenevein* involved an elected judge's televised broadcast rebuking a lawyer for improper attacks on the judiciary. *Id.* at 553-57. While the court invalidated part of the censure the judge received based on the judge's First Amendment right to comment publicly on a matter of public interest, it upheld the censure to the extent the judge used his courtroom and robes to stage his broadcast. *Id.* at 560-61. The judge's First Amendment right to speak out on a matter of public concern that involved him did not give him the right to use his courtroom as a pulpit. Of note, the Seventh Circuit rejected *Jenevein*'s strict scrutiny approach in favor of the more capacious *Pickering/Garcetti* standard, which accommodates both the public interest in unbiased judicial officers and the individual elected officer's First Amendment interests. *Siefert*, 608 F.3d at 985.

Vasquez cost Vasquez, his other clients, and others of Carrigan's constituents their representation by Carrigan, and deprived Carrigan of his right to express himself by voting on matters involving Vasquez or Vasquez's lobbying clients. Applying *Monserrate*'s "flexible framework," however, the burden is justified.

Statutorily imposed limits on a local government official's vote on a matter as to which his personal loyalties conflict, or appear to conflict, with his public duties do not severely or discriminatorily burden the official or his constituents. A public official, under Nevada's Ethics in Government Law, is not required to recuse so long as the official's "commitment in a private capacity to the interest of others . . . is not greater than that accruing to any other member of the general business, profession, occupation or group." NRS 281A.420(2)(c). It is only when, as the Commission found here, "the independence of judgment of a reasonable person in [the public officer's] situation would be materially affected by . . . his commitment in a private capacity to the interests of others" that recusal is required. *Id.* Even then, the official "may otherwise participate in the consideration of [the] matter," NRS 281A.420(2); he just may not vote on or advocate the passage or defeat of the matter in which he has a disqualifying personal interest. At least in the adjudicative setting, moreover, recusal is the preferred, more narrowly tailored way to avoid corruption or the appearance of corruption. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 360 (2010) (discussing *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868 (2009), as "limited to the rule that the judge must be recused, not that the litigant's political speech could be banned"); *see also Republican Party of Minn. v. White*, 536 U.S. 765, 794 (2002) (noting that, in the adjudicative context, a state "may adopt recusal standards [for its elected judges] more rigorous than due process requires").[5]

---

[5]Acknowledging the difficult balance between constituents' rights to public representation and personal interests giving rise to disqualifying conflicts of interest, the 2009 Legislature added the following paragraph to NRS 281A.420:

> Because abstention by a public officer disrupts the normal course of representative government and deprives the public and the public officer's constituents of a voice in governmental affairs, the provisions of this [statute] are intended to require abstention only in clear cases where the independence of judgment of a reasonable person in the public officer's situation would be materially affected by the public officer's . . . commitment in a private capacity to the interests of others.

NRS 281A.420(4)(b) (2009). This clarifying language was not part of NRS 281A.420 when Carrigan voted on the Lazy 8 matter and the Commission and the district court considered whether he violated the statute in his vote. Even accepting arguendo that strict scrutiny applies, the passage of this amendment militates against the overbreadth analysis the majority pursues and suggests the more prudent course would be to analyze this appeal on an as-applied basis.

.

The justification for requiring recusal in matters involving conflicts of interest on the part of elected public officials is strong. The Legislature passed Nevada's Ethics in Government Law ''[t]o enhance the people's faith in the integrity and impartiality of public officers and employees [by establishing] appropriate separation between the roles of persons who are both public servants and private citizens.'' NRS 281A.020(2)(b). In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court upheld statutory limits on citizens' direct candidate contributions in order to ensure ''against the reality or appearance of corruption'' of elected officials—deeming the government's interest in preventing actual or perceived quid pro quo corruption of elected officials sufficient to justify the undeniable incursion on private citizens' First Amendment rights such contribution limits represent. In *Citizens United*, 558 U.S. at 357, the Supreme Court reaffirmed *Buckley*. If the government's interest in ''ensur[ing] against the reality or appearance of corruption,'' *id.*, can justify the direct contribution limits upheld in *Buckley*, Nevada's concern with local government official's actual or apparent conflicts of interest surely justifies the limited disqualification stated in NRS 281A.420(2)(c).

At common law, ''[a] member of a local governing board is deemed to be a trustee for the citizens of the local entity.'' 2 *Antieau on Local Government Law* § 25.08[1] (2009). In such an official, ''[t]he law tolerates no mingling of self-interest. It demands exclusive loyalty, and if a local legislator has an interest that is of such personal importance that it impairs his or her capacity to act in the interest of the public, he or she cannot vote.'' *Id.* Numerous cases so hold, applying long-established common law. *See* 56 Am. Jur. 2d *Municipal Corporations, Etc.* § 126 (2010) (''A council member who has a direct personal interest, a financial interest, or an appearance of impropriety in a matter coming before the council is not eligible to vote in that matter on the grounds that to allow such a practice violates public policy. The proper thing to do in such a case is for the member to recuse or disqualify himself, or abstain from voting.'' (footnotes omitted) (collecting cases dating back as far as 1878)). Statutes regulating conflicts of interest by public officials supplement these common law rules, both in Nevada and elsewhere. *See* M. Cordes, *Policing Bias and Conflicts of Interest in Zoning Decisionmaking*, 65 N.D. L. Rev. 161, 175-79 (1989).

''A 'universal and long-established' tradition of prohibiting certain conduct creates 'a strong presumption' that the prohibition is constitutional.'' *Republican Party of Minn.*, 536 U.S. at 785 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 375-77 (1995) (Scalia, J., dissenting)). I submit that this presumption applies here.

*Overbreadth*

Carrigan does not contest the Ethics Commission's findings, which the district court upheld, that Carrigan's relationship with Vasquez was disqualifying.[6] Nor does the majority debate that, as applied, NRS 281A.420(2) and (8) legitimately required Carrigan to abstain from voting on the Lazy 8 matter. Majority opinion *ante* at 282 n.5. Nonetheless, Carrigan wins reversal because the majority concludes that, since strict scrutiny applies, so does the overbreadth doctrine, and that NRS 281A.420(8)(e), read in isolation from the rest of the statute to which it relates, is unconstitutionally overbroad. With this conclusion I cannot agree.

Overbreadth analysis is an exception to the basic rule that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). The rule against hypothetical challenges rests "on more than the fussiness of judges"; it "reflect[s] the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Id.* at 610-11. As an exception to the rule against deciding cases based on hypotheticals, the overbreadth doctrine is strictly limited. It applies only to "statutes which, by their terms, seek to regulate only spoken words," burden "innocent associations," or delegate "standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints." *Id.* at 612-13 (internal quotation omitted).

In *Broadrick*, the Court rejected an overbreadth challenge by Oklahoma government employees to a state personnel statute patterned on the federal Hatch Act, which proscribes partisan political activities by government employees. Concededly, the Act's broad terms could be read to prohibit some constitutionally protected speech. However, it fairly applied to the conduct engaged in by the employees before the Court. Since the statute sought "to regulate political activity in an even-handed and neutral manner" and reached "a substantial spectrum of conduct that [was] manifestly subject to state regulation," the government employees' overbreadth challenge failed. *Id.* at 616. In reaching this conclusion, the Court cautioned against too easy or promiscuous resort to overbreadth analysis in conduct cases. The function of

---

[6]Carrigan was in the final weeks of a contested reelection when he voted on the Lazy 8 matter. His campaign manager, fund raiser and longtime political adviser was Carlos Vasquez, whose lobbying client was the Lazy 8 on whose application Carrigan voted. The Commission found:

facial overbreadth adjudication . . . attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid . . . laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Id.* at 615.

*Broadrick* disposes of Carrigan's overbreadth challenge. Here, the challenged statute applies to conduct: the governmental act of voting on a local land use matter. Even granting that an elected official's vote on a public matter carries an element of expressive speech, the statute is content-neutral. It regulates *when* an official may or may not vote, not *how* he or she should vote. Its justification lies in avoiding corruption or the appearance of corruption and in promoting the public's faith in the integrity of its local government. Such a statute, applying in a content-neutral way to both conduct and speech in the government setting, should not fall to overbreadth analysis.

The majority does not identify the protected conduct that NRS 281A.420(8)(e)'s declared overbreadth improperly catches in its sweep. *But see United States v. Stevens*, 559 U.S. 460, 473-74 (2010) ("[t]he first step in overbreadth analysis is to construe the challenged statute" preparatory to deciding whether "a substantial

---

A reasonable person in Councilman Carrigan's position would not be able to remain objective on matters brought before the Council by his close personal friend, confidant, and campaign manager [Vasquez], who was instrumental in getting Councilman Carrigan elected three times. Indeed, under such circumstances, a reasonable person would undoubtedly have such strong loyalties to this close friend, confidant and campaign manager as to materially affect the reasonable person's independence of judgment.

As the district court noted, the legislative history of NRS 281A.420 supports the Ethics Commission's finding that this relationship was disqualifying. *See* Hearing on S.B. 478 Before Senate Comm. on Gov't Affairs, 70th Leg. (Nev., March 30, 1999) (while a prior campaign association would not necessarily be disqualifying, if the relationship "was one where the same person ran your campaign time, after time, after time, and you had a substantial and continuing relationship, yes, you probably ought to disclose and abstain in cases involving that particular person").

number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (quotations and citations omitted)). Instead, the majority offers the *ipse dixit* that "[t]he definition of a 'commitment in a private capacity' in subsection 8(e) fails to sufficiently describe what relationships are included within NRS 281A.420(2)(c)'s restriction. As a result, the statute's reach is substantially overbroad." Majority opinion *ante* at 288.[7]

Read in isolation and parsed word-for-word, paragraph (e) of NRS 281A.420(8) can be seen as imprecise. But it is not freestanding. It refers to the rest of NRS 281A.420, which explains when disqualification is required (situations in which "the independence of judgment of a reasonable person in his situation would be materially affected by . . . [h]is commitment in a private capacity to the interests of others," NRS 281A.280(2)); identifies the types of relationships that are disqualifying (household, family, employment, or business, NRS 281A.280(8)(a)-(d)); and then, under those headings, provides for disqualification based on "[a]ny other commitment or relationship that is substantially similar" to those listed, NRS 281A.420(8). Given the long common law history disqualifying local officials from voting on matters as to which they have conflicts of interest—and the elusive nature of conflicts of interest—the statute could have ended with the general proscription in NRS 281A.420(2) and passed muster. *Cf.* 2 Antieau, *supra*, § 25.08[1], at 25-47 ("The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case. No definitive test has been devised."). Stating a general rule, followed by a list that ends with a catchall, does not make a statute unconstitutionally overbroad:

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can suffi-

---

[7]This statement seems more appropriate to a void-for-vagueness than an overbreadth challenge but Carrigan does not have a legitimate vagueness challenge. The Ethics Commission is available to rule in advance on whether a disqualifying conflict of interest exists; Carrigan admits he had six months lead time before the Lazy 8 application came to a vote; his sanction was a civil rebuke, not a criminal penalty. He thus cannot prevail on a void-for-vagueness challenge. *Compare Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim . . . for lack of notice"), *with Broadrick*, 413 U.S. at 608 n.7 (rejecting the government employees' vagueness challenge to lack of notice given that there was a review board available, as here, to rule in advance on the permissibility of their proposed conduct).

ciently understand and comply with, without sacrifice to the public interest.

*United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578-79 (1973); *see* 2A Norman A. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:17, at 358-60 (2007) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," thus inherently limiting the statute's terms).

\* \* \* \* \*

The vote in this case did not signify much in the end, because Carrigan's vote was in the minority. But applying First Amendment strict scrutiny and overbreadth precepts to invalidate state conflicts-of-interest laws that govern local governmental officials who vote is a mistake that I fear opens the door to much litigation and little good.