**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 96-3864

---

Christina Peeper,                         *
                                          *
            Appellant,          *
                                          *
          v.                              * Appeal   from   the   United
States
                                          * District Court for the
Callaway County Ambulance District, Western    District    of
Missouri.
political subdivision of the State of
Missouri,                                 *
                                          *
            Appellee.           *

---

Submitted:  May 21, 1997

Filed: August 19, 1997

---

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.

---

HEANEY, Circuit Judge.

     Appellant, Christina Peeper, sought injunctive relief
from a resolution of a county  ambulance district board
of directors limiting her participation as a member of
that board because of her marriage to an employee of the
ambulance district.  The district court denied Peeper's
motion, holding that the resolution was narrowly drawn to
meet significant state interests.  We reverse.

In April 1996, Peeper became a member of the Callaway County Ambulance District Board of Directors ("Board") after winning an election for the seat representing her subdistrict.  Peeper's husband had worked as an emergency medical technician and supervisor for the Callaway County Ambulance District ("District") for two years at the time of Peeper's election to the Board.  The District is a corporate body and political subdivision of the State of Missouri governed by the six-member Board.  At the time of Peeper's election, the District and its employees were engaged in discussions over three major issues affecting their employment relationship:  threatened litigation regarding overtime wages under the Fair Labor Standards Act; organization of the employees of the District for purposes of collective bargaining; and the schedule and hours worked by District employees.

Peeper attended her first meeting as a member of the Board on April 23, 1996.  After conducting its routine business and election of officers, the Board adopted, over Peeper's objection, a resolution limiting Peeper's participation as a member of the Board.  On May 28, 1996, the Board passed an amended resolution with the same goal.  The resolution provided:

> [I]n order to comply with applicable law and effectively prevent Christin[a] Peeper from using confidential information concerning the District for financial gain, . . . the undersigned board members desire and do hereby allow Christin[a] Peeper to participate in any

District matter except she may not participate in discussions involving, or vote upon, any of the following:

A.    Legal actions, causes of action or litigation between the District and its employees and any confidential or privileged communication between the District or its representatives and its attorneys or legal work product;

B.    Hiring, firing, disciplining or promoting of particular employees by the District when personal information about the employee, including information relating to the performance or merit of individual employees, is discussed or recorded;

C.    Testing and examination materials, before the test or examination is given or, if it is to be given again, before so given again;

D.    Preparation, including any discussions or work product, on behalf of the District or its representatives for negotiations with employee groups;

E.    Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, including information relating to medical, psychiatric, psychological, or alcoholism or drug dependency diagnosis or treatment; and,

F.    Any other matter implicating the conflict-of-interest concerns of Chapter 105 RSMo which the board may, by majority vote, decide to prevent Christin[a] Peeper from hearing, participating in, or voting upon.

. . . [I]n order effort [sic] to comply with applicable law and effectively prevent Christin[a] Peeper from acting in matters that would result in a specific monetary benefit to her or her spouse, that Christin[a] Peeper is directed to recuse herself and if she does not recuse herself she is prohibited from hearing, participating in, or voting upon the following:

A.    Budgetary items involving the compensation, benefits, and pensions paid to employees;

B.    The hiring, promotion, discipline, compensation, benefits, and pensions of employees of the District; and

C.    Any other matter implicating the conflict-of-interest concerns of Chapter 105

5

RSMo which the board may, by majority vote, decide to prevent Christin[a] Peeper from hearing, participating in, or voting upon.

(Jt. App. at 62-64). The Missouri conflict-of-interest law, to which the resolution refers provides, in part, that:

No elected or appointed official or employee . . . of any political subdivision [of the state] shall:
. . . .

(2) Use confidential information[1] obtained in the course of or by reason of . . . [her] official capacity in any manner with intent to result in financial gain for [her]self [or her] spouse . . . ;

(3) Disclose confidential information obtained in the course of or by reason of [her] . . . official capacity in any manner with intent to result in financial gain for [her]self or any other person;

(4) Favorably act on any matter that is so specifically designed so as to provide a special monetary benefit to such official or [her] spouse . . . . In all such matters such officials must recuse themselves from acting . . . .

Mo. Rev. Stat. § 105.454 (1997) (footnote added). Board members expressed concern about their own potential criminal liability[2] in the event Peeper misused information she received as a member of the Board.

Peeper protested the May resolution and filed a claim in federal court seeking injunctive relief based on her claim that the resolutions violated her rights under the First and Fourteenth Amendments to the United States Constitution and under the free speech clause of the Missouri Constitution. The district court denied

---

[1]Confidential information is defined as "all information . . . which is of such a nature that it is not, at that time, a matter of public record or public knowledge." Mo. Rev. Stat. § 105.450(5) (1997).

[2]The Missouri conflict-of-interest law imposes criminal sanctions on any person who violate its strictures. The first knowing violation of the conflict-of-interest law constitutes a class B misdemeanor under Missouri law. Mo. Rev. Stat. § 105.478(1) (1997). A party committing a second offense under the law is guilty of a class D felony. Id. § 105.478(2).

Peeper's request for relief. The court held that the May resolution is "content-neutral," narrowly tailored to meet the significant government interests of preventing the appearance of government corruption and promoting the effective functioning of the District, and leaves open alternative channels of communication for Peeper. Id. at 6. The court further held that the May resolution conforms to the provisions of the Missouri conflict-

of-interest law, specifically citing section 105.476 which provides, in part, that "nothing in [s]ections 105.450 to 105.498 shall prohibit any political subdivision from establishing additional or more stringent requirements than those specified in [s]ections 105.450 to 105.498."  Mo. Rev. Stat. § 105.476 (1997). The restrictions in the May resolution place limitations on Peeper that are not rationally related to the goals of Missouri conflict-of-interest law and that impinge on Peeper's First Amendment associational rights and her Fourteenth Amendment equal protection rights.  Therefore, we reverse.

## II.

We review the district court's conclusions of law de novo.  United States v. Kistner, 68 F.3d 218, 220-21 (8th Cir. 1995).  Our first task is to determine whether the challenged resolution deserves scrutiny that goes beyond that traditionally required for restrictions placed on candidates or officeholders.  See Clements v. Fashing, 457 U.S. 957, 963 (1981).  Where a regulation implicates a fundamental right, such as the First Amendment's free speech guarantee, we review the regulation under heightened scrutiny.  Id.  If no fundamental right is implicated, traditional equal protection principles apply.  Id.  Traditional equal protection principles dictate that state-imposed burdens that affect some citizens differently than others offend equal protection under the Fourteenth Amendment only if such a burden is "wholly irrelevant to the achievement of the [s]tate's [constitutional] objectives."  McGowan v. Maryland, 366 U.S. 420, 425 (1961).

9

The district court examined the May resolution under the First Amendment strict scrutiny standard.[3] We disagree that strict scrutiny applies to the limitations at issue.

_____

[3]Strict scrutiny under the First Amendment dictates that a state may not restrict speech on a content basis unless it can show the restriction is narrowly tailored to serve a compelling state interest.  Denver Area Educ. Telecomm. Consortium, Inc. v. FCC, 518 U.S. ___, ___ (1996).

An individual's right to be a candidate for public office under the First and Fourteenth Amendments is nearly identical to one's right to hold that office.  Because of the analogous rights involved, we employ the same constitutional test for restrictions on an officeholder as we do for restrictions on candidacy.  In reviewing candidacy restrictions, the existence of barriers to a candidate's access to the ballot "does not of itself compel close scrutiny."  Bullock v. Carter, 405 U.S. 134, 143 (1972).  The Supreme Court has upheld restrictions on candidacy that are unrelated to First Amendment values and that "protect the integrity and reliability of the electoral process itself."  See Anderson v. Celebrezze, 460 U.S. 780, 788 n.9 (1983) (citing Clements, 457 U.S. at 973 (upholding state provision prohibiting an incumbent Justice of the Peace from seeking election to the state legislature)).  To determine whether to uphold restrictions on candidacy, we first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments" caused by the challenged restriction.  Anderson, 460 U.S. at 789.  Following that evaluation, we must:

> identify and evaluate the precise interests put forward by the [s]tate as justifications for the burden imposed by the rule.  In passing judgment, the Court must not only determine the legitimacy and the strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

Id.

Following this process, we initially consider the injury caused by restrictions on the officeholder. As is the case with restrictions on candidacy, restrictions on an elected official's ability to perform her duties implicate the interests of two distinct parties: the individual's First Amendment associational rights and Fourteenth Amendment equal protection rights; and the voters' rights to be meaningfully

represented by their elected officials. Cf. Bullock, 405 U.S. at 143 (1972) ("[T]he rights of voters and the rights of candidates do not always lend themselves to neat separation" when considering the effect of limitations on candidacy). Restrictions on a public official's participation necessarily affect that individual's First Amendment associational rights and Fourteenth Amendment equal protection rights.[4] Legitimate state interests may warrant restrictions that are de minimis limitations of the official's participation. See Clements, 457 U.S. at 972-73. Restrictions on an officeholder after election also infringe upon voters' rights to be represented even more severely than when a state similarly restricts candidacy.[5]

---

[4]Limitations on an elected official's participation in the proceedings of a public body such as the District also conceivably affect the official's First Amendment free speech rights, which would require us to apply strict scrutiny as Peeper suggests. Here, however, the May resolution only limits Peeper's participation as a member of the Board and does not limit her ability to vote for Board members, to speak before the Board during public comment periods, or to otherwise express her opinions about the District's operation as any other citizen may under the First Amendment's free speech guarantee.

[5]Candidacy restrictions affect the voters' First Amendment right to be represented by reducing the pool of candidates, although voters have the opportunity to recruit other candidates to represent their viewpoints. See Plante v. Gonzalez, 575 F.2d 1119, 1126 (2d Cir. 1978) (requirements for candidacy are not unconstitutional unless they deny a cognizable group of citizens the right to meaningful representation through other candidates). Limitations on an officeholder, by contrast, provide voters no opportunity to be heard through an alternative representative. If the restrictions prevent the officeholder from meaningfully representing the voters who elected the official, such restrictions are subject to strict scrutiny. See Bullock, 405 U.S. at 143. Because Peeper does not raise the issue of the voters' rights, and because we hold the May resolution unconstitutional under the rational-basis test, we need not determine whether

13

Although the district court upheld the May resolution applying the more rigid strict-scrutiny standard, we hold the resolution unconstitutional under rational-basis

strict scrutiny applies.

14

review.  The resolution's provisions injure Peeper's First Amendment associational rights and her Fourteenth Amendment equal protection rights.  The resolution creates a standard specific to Peeper that treats her differently than other Board members, strongly implicating her Fourteenth Amendment equal protection rights.  The restrictions also restrain Peeper's interaction with other Board members, implicating her First Amendment associational rights.

Having determined that the resolution injures Peeper's First and Fourteenth Amendment rights, we evaluate the state's purported interests and whether the restrictions rationally serve those interests.  The Board's stated interests are threefold: to prevent the misappropriation of information for personal gain; to prevent the appearance of impropriety; and to promote the free flow of ideas among members of the Board.[6]  Each of these interests, if served, can at a minimum constitute a reasonable state interest.  <u>See</u>, <u>e.g.</u>, <u>FEC v. National Conservative Political Action Comm.</u>, 470 U.S. 480, 500 (1985) (government's interest in avoiding corruption is compelling); <u>Buckley v. Valeo</u>, 424 U.S. 1, 27 (1976) (prevention of the appearance of corruption is a concern almost  equal to the prevention of actual corruption); <u>New York Times Co. v. Sullivan</u>, 376 U.S. 270 (1964)

---

[6]Board members also expressed an interest in avoiding their own criminal liability for violations of the Missouri conflict-of-interest law that Peeper might commit.  Yet, the statute requires a person to "knowingly" violate the conflict-of-interest law before that person is subject to criminal liability.  Mo. Rev. Stat. § 105.478(1).  The mere presence of Peeper in discussions that are not specific to her husband cannot constitute knowledge of, much less the "aiding or abetting"of a violation of the statute on the part of other Board members.

(uninhibited, wide-open debate should be a "profound national commitment" and a "fundamental principle of the American government"). In this case, however, the portions of the resolution that restrict Peeper from participating in or even hearing discussions not directly related to her husband do not rationally relate to those interests.

The May resolution limits Peeper in a wide range of matters, most of which do not involve the concerns expressed by the Board or addressed by the conflict-of-interest law. For instance, the May resolution prevents Peeper from participating in discussions of or voting on "[l]egal actions, causes of action or litigation between the District and its employees" without a requirement that the topic be related to Peeper's husband's employment. Likewise, the resolution prevents Peeper from participating in discussions of hiring or firing employees or addressing testing and examination materials without regard to whether Peeper's husband is associated with the matters. The resolution goes well beyond the Missouri conflict-of-interest law's general prohibition of the misuse of confidential information for financial gain and recusal requirement for measures "designed . . . to provide a special monetary benefit" to the official or her spouse.

The Board's concern about keeping its discussions free-flowing, particularly during the Board's closed sessions, is based on its belief that Peeper's presence would chill discussions between other Board members. This chilling, the Board contends, stems from the other Board members' opinion that if Peeper is present she might pass on confidential information to her husband who would, in turn, pass it on to his co-workers. It is incongruous, however, for a state to allow the election of people with such relationships to public office and then consider them less-trustworthy stewards of confidential information merely because of these relationships. The Missouri conflict-of-interest law prohibits any public official from misusing confidential information or acting for self-benefit, and those with

17

spouses employed by the public bodies they serve perhaps face greater temptations to run afoul of that prohibition. One does not, however, face any additional temptation where the matters are unrelated to the official's spouse. Yet the May resolution prohibits Peeper from participating in any matter dealing with any employee's records, any testing material, or the hiring or firing of any employee. The Board's interest in preventing corruption or at least the appearance of corruption is not served by the vast portions of the May resolution that go beyond matters that could not lead or appear to lead to corrupt behavior by Peeper.

As such, those portions of the May resolution are not rationally related to the state interests cited by the Board.

Because provisions of the May resolution infringe upon Peeper's constitutional rights under the First and Fourteenth Amendments without being rationally related to a legitimate state interest, the May resolution cannot stand as written.

## III.

We reverse the decision of the district court. In light of our holding that the May resolution cannot stand as written, no injunctive relief is necessary.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

19