# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3139

_____

Roger Lee; Mary Lee

*Plaintiffs - Appellees*

v.

William Driscoll; Greg Albrecht; William Albrecht

*Defendants - Appellants*

Mathews Township, by and through its township board of supervisors

*Defendant*

_____

No. 16-3236

_____

Roger Lee; Mary Lee

*Plaintiffs - Appellants*

v.

William Driscoll; Greg Albrecht; William Albrecht; Mathews Township, by and through its township board of supervisors

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of South Dakota - Sioux Falls

———————

Submitted: May 10, 2017
Filed: September 7, 2017

———————

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

———————

KELLY, Circuit Judge.

Mary and Roger Lee sued Mathews Township, South Dakota, and three members of the Township Board of Supervisors—William Driscoll, Greg Albrecht, and William Albrecht (collectively, the individual defendants)—alleging claims under 42 U.S.C. § 1983 and state law. The defendants moved for dismissal and summary judgment, which the district court denied in part and granted in part. The individual defendants appeal the district court's denial of summary judgment as to three § 1983 claims, arguing that they are entitled to qualified immunity. The plaintiffs, asserting pendent jurisdiction, cross-appeal the court's order as to several other claims. We affirm in part and reverse in part.

## I. Background

The Lees own land in Mathews Township, South Dakota. Rock Creek runs across their land through a natural waterway before meeting 219th Street. In 2011, Rock Creek ran under 219th Street, passing through an eight-foot culvert and a three-foot culvert. Flooding in 2011 washed out the culverts, and the Federal Emergency Management Agency (FEMA) awarded the Township a grant for the repair. The Lees believed that two nine-foot culverts would be necessary for adequate drainage, but

that even a single nine-foot culvert would provide better drainage than the previous configuration of an eight-foot culvert and a three-foot culvert. In the Lees' understanding, the Township planned to build a nine-foot culvert under 219th Street. However, after the culvert was installed, they discovered it was only eight feet in diameter.

The Lees attended a meeting of the Township Board of Supervisors and voiced concerns about the culvert project. The meeting became heated, and the owner of the building asked all in attendance to leave. The Township Board held several additional meetings regarding the project, but many of the meetings were closed to the public. At the time, Mary Lee was the Township Board Clerk—an elected position—but was excluded from all non-public Township Board meetings about the culvert project. According to the Lees, the Township Board decided to install an additional, three-foot culvert under 219th Street and to refund leftover grant money to FEMA without holding public meetings. The Township Board was later reprimanded for violating South Dakota open meeting laws by a state administrative body.

The Lees sued the defendants pursuant to 42 U.S.C. § 1983, alleging Fourteenth Amendment due process violations, Fourteenth Amendment equal protection violations, First Amendment free speech, association, and retaliation violations, and a Fifth Amendment taking without just compensation. They also brought state-law claims, alleging conversion, deceit, and a taking without just compensation in violation of the South Dakota Constitution.

The defendants moved for dismissal and summary judgment on the plaintiffs' claims. In part, the individual defendants argued they were entitled to summary judgment on the § 1983 claims based on qualified immunity. The district court granted summary judgment in favor of Mathews Township and the individual defendants in their official capacities as to all claims; granted summary judgment to

the individual defendants in their individual capacities as to the due process, equal protection, free speech, and conversion claims; and dismissed the federal and state takings claims. It also dismissed the Lees' claims for future flooding damages, declaratory judgment, and injunctive relief. However, the district court denied summary judgment to the individual defendants in their individual capacities as to the Lees' First Amendment retaliation and petition claims, Mary Lee's First Amendment association claim, and the Lees' state-law deceit claim.

The individual defendants appeal the district court's denial of summary judgment as to the retaliation, association, and petition claims, arguing that they are entitled to qualified immunity. The plaintiffs cross-appeal, arguing that the district court erred in dismissing their claims for declaratory relief and injunctive relief; in granting summary judgment to Mathews Township and the individual defendants in their official capacities; and in granting summary judgment to the individual defendants in their individual capacities as to their due process, equal protection, and free speech claims.

## II. Discussion

### A. Individual defendants' appeal

We have jurisdiction over interlocutory appeals of a district court's denial of qualified immunity as long as the appeal is not based on whether there is a genuine dispute of material fact. White v. McKinley, 519 F.3d 806, 812 (8th Cir. 2008). "We review de novo the district court's denial of qualified immunity." Id. at 813. "In determining whether an officer is entitled to qualified immunity, we ask (1) 'whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right'; and (2) whether the asserted constitutional right is clearly established." Wallingford v. Olson, 592 F.3d 888, 892 (8th Cir. 2010) (quoting White, 519 F.3d at 813).

**1. First Amendment retaliation**

The district court concluded that the facts viewed in the light most favorable to the plaintiffs establish that the individual defendants retaliated against the plaintiffs for exercising their First Amendment rights. It explained that "the Lees engaged in First Amendment-protected activity when they publicly criticized the township board's decision-making and handling of FEMA funds, and when Mary Lee filed a complaint for violation of the state's open meeting laws," and that there was evidence that those activities motivated the defendants to exclude the Lees from Township Board meetings by closing them to the public.

The individual defendants argue that the district court erred in denying qualified immunity to them on this claim because it failed to consider whether excluding someone from a meeting would deter a person of ordinary firmness from continuing to exercise their First Amendment rights. See Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014) (to establish a First Amendment retaliation claim, the plaintiff must show "that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity"). However, the defendants did not raise this ordinary-firmness argument before the district court, either in their briefs or at the hearing on their motion for dismissal and summary judgment. Accordingly, we decline to address it for the first time on appeal. See Shanklin v. Fitzgerald, 397 F.3d 596, 601 (8th Cir. 2005) ("Absent exceptional circumstances, we cannot consider issues not raised in the district court.").[1] Because

---

[1]Furthermore, even if the individual defendants had properly preserved the issue of whether their actions were sufficient to chill a person of ordinary firmness from engaging in First Amendment-protected activity, we doubt that we would have jurisdiction to review it at this stage of the proceedings. See White, 519 F.3d at 812–13 ("This court does not have jurisdiction to consider an interlocutory summary-judgment qualified-immunity appeal if 'at the heart of the argument is a dispute of fact.'" (alteration omitted) (quoting Pace v. City of Des Moines, 201 F.3d 1050, 1053 (8th Cir. 2000))).

the individual defendants make no other argument in support of their appeal of the retaliation claim, we affirm the district's court denial of qualified immunity as to this claim.

### 2. First Amendment association

The district court determined that the facts viewed in the light most favorable to the plaintiffs establish that the individual defendants violated Mary Lee's right to freedom of association because there was evidence that they excluded her from Township Board meetings despite her elected role as Township Board Clerk. In reaching this conclusion, the district court relied on Peeper v. Callaway County Ambulance District, 122 F.3d 619 (8th Cir. 1997), in which we held that restrictions on an elected official's ability to perform her duties violate her right to freedom of association unless the restrictions are rationally related to a legitimate state interest. Id. at 623. The district court noted questions of fact as to whether Mary Lee's exclusion from the meetings was rationally related to a legitimate state interest, and accordingly denied summary judgment.

The individual defendants contend that the district court erred in concluding Mary Lee had a clearly established constitutional right to perform her duties. They argue that Peeper is distinguishable, because although Township Board Clerk is an elected position, it entails only "ministerial" duties like taking meeting minutes, and does not involve voting or otherwise participating in the Township Board's decision-making process. But Peeper makes no such distinction, and the individual defendants cite no authority suggesting this is a meaningful distinction in the context of the First Amendment right to freedom of association. Further, we note that even if Mary Lee's responsibilities are properly characterized as "ministerial," that does not necessarily remove them from the political realm; voters may well have an interest in how and by whom records of government activities are kept. Accordingly, we decline to read

into <u>Peeper</u> the limitation the individual defendants propose, and affirm the district court's denial of qualified immunity as to this claim.

### 3. First Amendment petition

The district court concluded that the facts taken in the light most favorable to the Lees establish that the individual defendants violated the Lees' First Amendment right to petition by preventing the Lees from communicating their concerns about the culvert repairs.

The defendants argue that this was error because being excluded from non-public board meetings is not a violation of the First Amendment right to petition. We agree. When the government holds meetings that are open to public participation, excluding particular members of the public may violate the First Amendment. <u>See City of Madison v. Wisc. Emp't Relations Comm'n</u>, 429 U.S. 167, 175–76 (1976). But the same is not true for government meetings that are not public, because "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." <u>Minn. State Bd. for Cmty. Colls. v. Knight</u>, 465 U.S. 271, 285 (1984). Because there is no First Amendment right to participate in a non-public government meeting as a member of the public,[2] we reverse the district court's denial of qualified immunity as to this claim.

---

[2]To the extent the Lees raise this issue, we further note that unlike in the context of the First Amendment right to free association, an elected official has no First Amendment petition or free-speech right to participate in non-public government meetings in her official capacity. <u>See Peeper</u>,122 F.3d at 623 n.4 (explaining that an elected official's free-speech rights are not implicated when her ability to perform her duties is limited, but she can still "express her opinions . . . as any other citizen may under the First Amendment's free speech guarantee").

**B. Plaintiffs' cross-appeal**

Asserting pendent appellate jurisdiction, the Lees cross-appeal the district court's order on the grounds that: (1) the Township and the individual defendants are liable to the Lees in their official capacities; (2) the Lees were deprived of due process when the defendants made decisions that affected their land without providing notice or hearing; (3) the Lees' equal protections rights were violated because the Township provides better road maintenance services to other residents; (4) the Lees had a free speech right to participate in Township Board meetings; and (5) the Lees are entitled to seek a declaratory judgment and injunction to prevent future unlawful action by Mathews Township or its elected board members.

Exercising pendent appellate jurisdiction is permissible only "where the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one." Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995) (internal quotations omitted) (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)). "A pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." Id. (alteration omitted) (quoting Moore, 57 F.3d at 930).

Only one of the issues raised in the cross-appeal is inextricably intertwined with an issue raised in the main appeal: whether the plaintiffs had a clearly established right under the First Amendment free-speech clause to participate in non-public Township Board meetings. Because we have already concluded there is no First Amendment right to participate in a non-public government meeting as a member of the public, we affirm the district court's grant of summary judgment as to

that claim. We dismiss the remainder of the Lees' cross-appeal for lack of jurisdiction.

## III. Conclusion

With the exception of their appeal of the district court's grant of summary judgment as to their free-speech claim, we dismiss the plaintiffs' cross-appeal. We reverse the district court's denial of qualified immunity for the individual defendants with respect to the Lees' § 1983 claim based on the First Amendment right to petition, and remand the matter for further proceedings. We affirm the district court's order in all other respects.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I concur in the decision to reverse the denial of qualified immunity for the Township Board members on the claim of Roger and Mary Lee alleging a First Amendment right to petition the government. I also agree with the court's resolution of the cross-appeal. I conclude, however, that the Board members are entitled to qualified immunity on the other two First Amendment claims brought by the Lees, so I would reverse in part and direct the dismissal of those claims as well.

I.

One of Mary Lee's claims against three members of the Township Board of Supervisors is that they violated her clearly established right to freedom of association under the First and Fourteenth Amendments when they excluded her from certain Township Board meetings. Because there was no clearly established right of association for a Township clerk to attend Township Board meetings, I would reverse the district court's denial of qualified immunity on this claim.

-9-

"[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity thus protects an official from suit unless the official has violated a clearly established right of the plaintiff. The immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For an official to violate a clearly established right, "precedent must have placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), such that any "reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Anderson*, 483 U.S. at 640).

Lee claims that the Township Board members deprived her of the freedom to associate by excluding her from Township meetings and preventing her from performing her duties as the Township clerk. Lee relies on *Peeper v. Callaway County Ambulance District*, 122 F.3d 619 (8th Cir. 1997), where this court held that restrictions on an elected Board member's ability to attend Board meetings restrained her "interaction with other Board members, implicating her First Amendment associational rights." *Id.* at 623. Peeper, the plaintiff, was elected to a six-member board that governed a corporate body and political subdivision of the State of Missouri. This court deemed it unconstitutional for the rest of the Board to prevent Peeper from participating in discussions with other Board members or voting with other Board members on certain matters, because the restrictions did not rationally relate to a legitimate state interest. *Id.* at 624.

It is, at a minimum, not clearly established that the First Amendment right of association recognized in *Peeper* extends to an elected clerk who performs ministerial duties at Township Board meetings. Peeper was elected to represent a subdistrict on a Board and was entitled to participate in Board discussions and vote on Board

matters. Although Lee was an elected official, her role was substantially different than Peeper's. Lee's job was to record the Township Board's meeting minutes and to preserve the records. *See* S.D. Codified Laws §§ 8-6-3 to -5. She did not act in a representative policymaking capacity and had no right to deliberate with Board members or to vote on Township matters. She admitted that her input on decisions of the Board was "the same as every other citizen" of the Township, in that she could attend meetings and voice her opinion.

It is debatable whether *Peeper*'s conclusion about the First Amendment right of association should be extended to Lee. That Lee held an elected position does not necessarily mean that she enjoyed a constitutional right to associate with policymaking Board members at Board meetings. The analysis in *Peeper* focused on the *function* of the elected officials. Because Peeper was a Board member whose elected position entailed deliberating with other Board members on policy matters and voting on policy questions as part of the Board, the court concluded that excluding her from meetings without a legitimate state interest violated the right of association. But the same rationale does not apply to Lee. Recognizing a constitutional right of association for a person whose right to participate in discussions with the Board at meetings is "the same as every other citizen" has potentially far-reaching implications.

Of course, as the majority notes, *Peeper* itself did not distinguish between policymaking officials who serve in a deliberative body and ministerial officials who are positioned like all other citizens, but there was no reason for the court in *Peeper* to address the point. The issue is joined here for the first time; Lee herself acknowledges that "[t]his is a unique case, and there are no others directly on point." Qualified immunity analysis must be "particularized" to the facts of the case, and rights should not be defined at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Anderson*, 483 U.S. at 640). In my view, it is not beyond debate that *Peeper* should be extended to this situation, and the Township

-11-

Board members are thus entitled to qualified immunity on Lee's claim alleging a violation of the First Amendment right of association.

## II.

The Lees also contend that the Board members unconstitutionally retaliated against them for their exercise of the right to freedom of speech. To establish a First Amendment retaliation claim, a plaintiff must show that she engaged in constitutionally protected activity, that the government officials took adverse action that was motivated by her exercise of constitutional rights, and that the adverse action caused her to suffer an injury that would chill a person of ordinary firmness from continuing the protected activity. *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002). The Lees complain that in retaliation for their speech, the Board members failed to provide them notice of future Board meetings, denied Mary Lee access to records that she had a duty to preserve as clerk on behalf of the Township, and made Mary Lee feel unwelcome and concerned.

On this qualified immunity appeal, the issue is whether the Lees had a clearly established right to be free from retaliation that consisted of denying notice to Township Board meetings and denying Mary Lee access to records. It was clearly established as a general matter that government officials cannot retaliate by taking adverse action that would chill a person of ordinary firmness. But qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

In my view, the Lees have not demonstrated that they were deprived of a clearly established right, because it was not beyond debate that the modest actions taken by the officials here—denying notice of meetings and denying access to records—violated the First Amendment. This court has said that "it would trivialize

-12-

the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Naucke*, 284 F.3d at 928 (quoting *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998)). We have been particularly reluctant to conclude that alleged intangible harm flowing from adverse actions is enough to meet the test.

In *Naucke*, the court ruled as a matter of law that alleged damage to the plaintiff's reputation, personal humiliation, disgrace, and mental anguish were not injuries that would chill a person of ordinary firmness. *Id.* at 927. The claim failed even though officials allegedly harassed the plaintiff by conducting a public audit of the fire department's ladies' auxiliary while she was president, publicly scolded her and called her names, posted a picture of her home with disparaging remarks, and circulated a letter suggesting that the city administrator (rather than her husband) was the father of her children. Likewise, in *Eggenberger v. West Albany Township*, 820 F.3d 938 (8th Cir. 2016), the court held as a matter of law that a township did not violate the First Amendment when, in retaliation for a citizen exercising his right to free speech, the township prevented him from viewing and photocopying documents that were generally available to the public. *Id.* at 940-41, 943. This court ruled that the township's activities would not have chilled an ordinary person from speaking.

The high water mark for retaliation claims is *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003), where this court held that a reasonable jury could find that the retaliatory issuance of four parking tickets, totaling $35.00, would chill a person of ordinary firmness from continuing to speak at city council meetings. Even there, however, the court emphasized that the city official had "engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out," and that parking tickets—though petty offenses—have "concrete consequences." *Id.* at 729.

-13-

The alleged retaliatory actions here did not involve engaging the "punitive machinery of government" to pursue sanctions against a citizen, and the actions did not have the "concrete consequences" of imposing monetary costs on the Lees or establishing a criminal record for petty offenses. Denying the Lees an opportunity to attend and observe Township Board meetings or to obtain Township records is arguably comparable to preventing the citizen in *Eggenberger* from viewing and photocopying public documents that were available to everyone else. Any harassment at issue here is no greater than the disparagement and humiliation deemed insufficient in *Naucke*. To overcome qualified immunity, the Lees must show that the alleged facts and settled law demonstrate that any reasonable official would have understood that his conduct violated the First Amendment. Because it is not beyond debate that the actions taken by the Township here caused injury that would chill a person of ordinary firmness, I would reverse the district court's order denying qualified immunity on this claim.

The court declines to address the merits of the First Amendment retaliation claim on the ground that the Board members did not raise an ordinary-firmness argument in the district court. Although the cursory briefing in the district court did not address specifically whether there was an adverse action that would chill a person of ordinary firmness, the Board members did argue that failing to notify Mary Lee of Board meetings was not an adverse employment action. Proof of an injury that would chill a person of ordinary firmness is an element of every retaliation claim, and the Lees do not assert on appeal that the Board members waived the issue. The Lees fully briefed the ordinary-firmness issue on appeal, and the entitlement to qualified immunity is a question of law that we may resolve now on full briefing without the potential inefficiency of a second appeal.

For these reasons, I concur in Parts II.A.3 and II.B of the majority opinion, but dissent from Parts II.A.1 and II.A.2. I would remand the case with directions to

-14-

dismiss the First Amendment retaliation and freedom of association claims based on qualified immunity.

_____