COLLOTGN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the decision to reverse the denial of qualified immunity for the Township Board members on the claim of Roger *587 and Mary Lee alleging a First Amendment right to petition the government. I also agree with the court’s resolution of the cross-appeal. I conclude, however, that the Board members are entitled to qualified immunity on the other two First Amendment claims brought by the Lees, so I would reverse in part and direct the dismissal of those claims as well.
I.
One of Mary Lee’s claims against three members of the Township Board of Supervisors is that they violated her clearly established right to freedom of association under the First and Fourteenth Amendments when they excluded her from certain Township Board meetings. Because there was no clearly established right of association for a Township clerk to attend Township Board meetings, I would reverse the district court’s denial of qualified immunity on this claim.
“[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.” Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity thus protects an official from suit unless the official has violated a clearly established right of the plaintiff. The immunity protects “all but the plainly incompetent or those who knowingly violate the law.” Mullenix v. Luna, — U.S.-, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). For an official to violate a clearly established right, “precedent must have placed the statutory or constitutional question beyond debate,” Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), such that any “reasonable official would have understood that what he is doing violates that right.” Id. (quoting Anderson, 483 U.S. at 640, 107 S.Ct. 3034).
Lee claims that the Township Board members deprived her of the freedom to associate by excluding her from Township meetings and preventing her from performing her duties as the Township clerk. Lee relies on Peeper v. Callaway County Ambulance District, 122 F.3d 619 (8th Cir. 1997), where this court held that restrictions on an elected Board member’s ability to attend Board meetings restrained her “interaction with other Board members, implicating her First Amendment associational rights.” Id. at 623. Peeper, the plaintiff, was elected to a six-member board that governed a corporate body and political subdivision of the State of Missouri. This court deemed it unconstitutional for the rest of the Board to prevent Peeper from participating in discussions with other Board members or voting with other Board members on certain matters,' because the restrictions did not rationally relate to a legitimate state interest. Id. at 624.
It is, at a minimum, not clearly established that the First Amendment right of association recognized in Peeper extends to an elected clerk who performs ministerial duties at Township Board meetings. Peeper was elected to represent a subdistrict on a Board and was entitled to participate in Board discussions and vote on Board matters. Although Lee was an elected official, her role was substantially different than Peeper’s. Lee’s job was to record the Township Board’s meeting minutes and to preserve the records. See S.D. Codified Laws §§ 8-6-3 to -5. She did not act in a representative policymaking capacity and had no right to deliberate with Board members or to vote on Township matters. She admitted that her input on decisions of the Board was “the same as every other *588 citizen” of the Township, in that she could attend meetings and voice her opinion.
It is debatable whether Peeper’s conclusion about the First Amendment right of association should be extended to Lee. That Lee held an elected position does not necessarily mean that she enjoyed a constitutional right to associate with policy-making Board members at Board meetings. The analysis in Peeper focused on the function of the elected officials. Because Peeper was a Board member whose elected position entailed deliberating with other Board members on policy matters and voting on policy questions as part of the Board, the court concluded that excluding her from meetings without a legitimate state interest violated the right of association. But the same rationale does not apply to Lee. Recognizing a constitutional right of association for a person whose right to participate in discussions with the Board at meetings is “the same as every other citizen” has potentially far-reaching implications.
Of course, as the majority notes, Peeper itself did not distinguish between policy-making officials who serve in a deliberative body and ministerial officials who are positioned like all other citizens, but there was no reason for the court in Peeper to address the point. The issue is joined here for the first time; Lee herself acknowledges that “[t]his is a unique case, and there are no others directly on point.” Qualified immunity analysis must be “particularized” to the facts of the case, and rights should not be defined at a high level of generality. White v. Pauly, — U.S. -, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam) (quoting Anderson, 483 U.S. at 640, 107 S.Ct. 3034). In my view, it is not beyond debate that Peeper should be extended to this situation, and the Township Board members are thus entitled to qualified immunity on Lee’s claim alleging a violation of the First Amendment right of association.
II.
The Lees also contend that the Board members unconstitutionally retaliated against them for their exercise of the right to freedom of speech. To establish a First Amendment retaliation claim, a plaintiff must show that she engaged in constitutionally protected activity, that the government officials took adverse action that was motivated by her exercise of constitutional rights, and that the adverse action caused her to suffer an injury that would chill a person of ordinary firmness from continuing the protected activity. Naucke v. City of Park Hills, 284 F.3d 923, 927-28 (8th Cir. 2002). The Lees complain that in retaliation for their speech, the Board members failed to provide them notice of future Board meetings, denied Mary Lee access to records that she had a duty to preserve as clerk on behalf of the Township, and made Mary Lee feel unwelcome and concerned.
On this qualified immunity appeal, the issue is whether the Lees had a clearly established right to be free from retaliation that consisted of denying notice to Township Board meetings and denying Mary Lee access to records. It was clearly established as a general matter that government officials cannot retaliate by taking adverse action that would chill a person of ordinary firmness. But qualified immunity analysis “must be undertaken in light of the specific context of the case, not as a broad general proposition.” Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quoting Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)).
In my view, the Lees have not demonstrated that they were deprived of a clear *589 ly established right, because it was not beyond debate that the modest actions taken by the officials here—denying notice of meetings and denying access to records— violated the First Amendment. This court has said that “it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.” Naucke, 284 F.3d at 928 (quoting Bloch v. Ribar, 156 F.3d 673, 679 (6th Cir. 1998)). We have been particularly reluctant to conclude that alleged intangible harm flowing from adverse actions is enough to meet the test.
In Naucke, the court ruled as a matter of law that alleged damage to the plaintiffs reputation, personal humiliation, disgrace, and mental anguish were not injuries that would chill a person of ordinary firmness. Id. at 927. The claim failed even though officials allegedly harassed the plaintiff by conducting a public audit of the fire department’s ladies’ auxiliary while she was president, publicly scolded her and called her names, posted a picture of her home with disparaging remarks, and circulated a letter suggesting that the city administrator (rather than her husband) was the father of her children. Likewise, in Eggenberger v. West Albany Township, 820 F.3d 938 (8th Cir. 2016), the court held as a matter of law that a township did not violate the First Amendment when, in retaliation for a citizen exercising his right to free speech, the township prevented him from viewing and photocopying documents that were generally available to the public. Id. at 940-41, 943. This court ruled that the township’s activities would not have chilled an ordinary person from speaking.
The high water mark for retaliation claims is Garcia v. City of Trenton, 348 F.3d 726 (8th Cir. 2003), where this court held that a reasonable jury could find that the retaliatory issuance of four parking tickets, totaling $35.00, would chill a person of ordinary firmness from continuing to speak at city council meetings. Even there, however, the court emphasized that the city official had “engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out,” and that parking tickets'—though petty offenses—have “concrete consequences.” Id. at 729.
The alleged retaliatory actions here did not involve engaging the “punitive machinery of government” to pursue sanctions against a citizen, and the actions did not have the “concrete consequences” of imposing monetary costs on the Lees or establishing a criminal record for petty offenses. Denying the Lees an opportunity to attend and observe Township Board meetings or to obtain Township records is arguably comparable to preventing the citizen in Eggenberger from viewing and pho-tocopjnng public documents that were available to everyone else. Any harassment at issue here is no greater than the disparagement and humiliation deemed insufficient in Naucke. To overcome qualified immunity, the Lees must show that the alleged facts and settled law demonstrate that any reasonable official would have understood that his conduct violated the First Amendment. Because it is not beyond debate that the actions taken by the Township here caused injury that would chill a person of ordinary firmness, I would reverse the district court’s order denying qualified immunity on this claim.
The court declines to address the merits of the First Amendment retaliation claim on the ground that the Board members did not raise an ordinary-firmness argument in the district court. Although the cursory briefing in the district court did not address specifically whether there was an adverse action that would chill a person of *590 ordinary firmness, the Board members did argue that failing to notify Mary Lee of Board meetings was not an adverse employment action. Proof of an injury that would chill a person of ordinary firmness is an element of every retaliation claim, and the Lees do not assert on appeal that the Board members waived the issue. The Lees fully briefed the ordinary-firmness issue on appeal, and the entitlement to qualified immunity is a question of law that we may resolve now on full briefing without the potential inefficiency of a second appeal.
For these reasons, I concur in Parts II.A.3 and II.B of the majority opinion, but dissent from Parts II.A.1 and II.A.2. I would remand the case with directions to dismiss the First Amendment retaliation and freedom of association claims based on qualified immunity.